## BUFORD *v.* STATE.

[86 South. 860, No. 21490.]

ROBBERY. *Exclusion of evidence accounting for possession of money by accused prior to robbery held error.*

In a trial for robbery, where the state was permitted to prove that when the defendant was arrested for the robbery in question he had possession of a sum of money equal, approximately, to his share of the money if he participated in the robbery, it was error to refuse to permit him to show that a reasonable time prior to the robbery he had such money, and account for his possession, and one day prior to the robbery is too short a time to limit such evidence.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Ed Buford was convicted of robbery, and he appeals. Reversed and remanded.

*Burch & Enochs,* for appellant.

When there is any serious doubt as to the admissibility of evidence, the doubt should be resolved in favor of the accused, citing *Gambrell* v. *State,* 92 Miss. 728. The proof in the case shows that at the time the appellant was arrested he had quite a sum of money in his possession. The state was allowed to introduce evidence showing that the accused possessed the said money at the said time, and thereby placing the burden upon the appellant to make a satisfactory explanation of his possession of the said money, and to meet the said burden he offered to prove that the money found upon him was money resulting from the sale of cotton, sold some three or four months prior to the time of his arrest, and that he had been in continuous possession of the said money from the sale of the said cotton down to the time of his arrest. The court refused to allow witnesses to testify that appellant had been in pos-

session of the said money during all the said time, and confined their testimony as to the possession of the said money to the day immediately preceding the alleged robbery. Appellant duly excepted to the ruling of the court.

By restricting the evidence of the possession of the money found on the appellant at the time of his arrest, the appellant was denied the right of giving a reasonable explanation of his having the said money at the time of his arrest; in other words, the witnesses were only allowed to tell that this appellant, who is a negro, had a large sum of money in his possession just prior to the alleged robbery, but the court refused to allow them to go back and show just how, when and where the appellant came into possession of the money that was found in his possession shortly after the robbery.

This case is exceedingly close on the facts; in fact but for the evidence of the rambling witness Sanderson, who is shown by reputable witnesses and officers to have made a half dozen conflicting statements as to the identity of his assailant, there would be no sort of evidence against this appellant at all; this being true, the appellant should have been allowed, through his witnesses, to go back to the time that he acquired the money found upon him when he was arrested, and show that he had continuously possessed it during all of said time. Such an explanation of the possession of money that the state represented to have been stolen would have been reasonable and no doubt have exonerated the appellant in the eyes of the jury, but by restricting the testimony to the possession of the money to the day just prior to the alleged robbery did not afford the appellant an opportunity to explain where he got the money in question; in fact this restriction put the appellant in a position where he was denied the right of making a reasonable explanation of his possession of the money.

We respectfully submit that this case should be reversed for the reasons above set forth, and this appellant given an opportunity of going before a jury and making

a full, complete and satisfactory explanation of the money found on his person at the time of the arrest, and the opportunity of having other witnesses testify and corroborate him in his claim to having had the money in his possession from January down to the time of the alleged robbery.

*Frank Robertson,* attorney-general, for the state.

The only error argued in appellant's brief as cause for reversal is that the court refused to allow witnesses for the appellant to testify as to the possession of money by the appellant from January, 1920, down to the time of the robbery in March. The court refused to allow the introduction of this testimony and confined the defendant to the time immediately preceding the alleged robbery.

It seems to me to be a self-evident proposition that the action of the court is eminently correct. I cannot see how the fact as to whether the defendant had thousands of dollars or hundreds of dollars in January and February, as a probative proposition, would prove that he was a thief or honest man. It seems to me that this character of evidence is entirely too remote and does not prove anything. He could have had money in large quantities in January and February and still have committed the crime.

The question in this case is one of identification. The state's case either stands or falls by this proposition. The jury has passed upon this question, and the exclusion of the testimony above referred to could possibly have no bearing upon the verdict. The real issue was identification. I submit that the case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted and convicted of robbery and sentenced to the state penitentiary, from which judgment he prosecutes this appeal.

The indictment charges a robbery of one J. B. Sanderson and the taking of three hundred dollars lawful money

of the United States, the personal property of the said San-
derson, from the person of the said Sanderson by putting
the said Sanderson in fear of some immediate injury to
his person.　The robbery in question took place in the
storehouse of the said Sanderson on George street in the
city of Jackson, at about eight o'clock at night.　Immedi-
ately after the robbery the police authorities were notified,
and two policemen of the city hurried to the scene of the
robbery.　These policemen were not introduced by the
state, but testified for the appellant.　Another policeman
was given a description of one of the persons who par-
ticipated in the robbery, and from the description given
arrested the appellant on the following morning.　When
arrested the appellant had upon his person one hundred
and thirty-one dollars.　He was taken to a butcher shop
near the scene of the robbery, and there Sanderson identi-
fied the appellant as being the person who held the gun
on him.　Sanderson testified that he was robbed of a sum
of money being near the sum of three hundred dollars;
the exact amount not being definitely known, but being
somewhere between two hundred and three hundred dol-
lars.　He said that he had one twenty-dollar bill in the
bag that the robbers took, and that the rest of the money
was in ten-dollar, five-dollar, and one-dollar bills, but he
could not give the amount of either kind of bill taken.

On the trial of this case in the circuit court Mr. San-
derson identified the appellant in very positive terms.
There is some conflict in the evidence as to the ease with
which Sanderson identified the appellant in the prelimi-
nary examination, but he did in that examination claim
that the appellant was the guilty party.

The owner of the butcher shop near Mr. Sanderson's
store testified as a state witness, and stated that Buford
was at his store about 7:30 o'clock on the evening of the
robbery, and the testimony of Mr. Sanderson shows he
was robbed about 8 o'clock in the evening.　The owner of
the butcher shop said that Buford changed a twenty-
dollar bill for a customer in his store that evening at about

7:30 o'clock, giving two ten-dollar bills for the twenty-dollar bill; then the butcher could not change the ten-dollar bill, and Buford changed that. The butcher said he could not state how much money Buford had, but said he had a black purse and was dressed with a raincoat over his other clothes; that when Buford went to get his purse to change the twenty-dollar bill the witness saw a pistol on Buford's person, a black-handled, dark-looking pistol. When Buford was arrested his room was searched and in his baggage was found an automatic, dark-colored pistol. Buford introduced two witnesses who testified that he was in his room from 7 o'clock in the evening on the day of the robbery until 10 o'clock the same evening; the parties claiming he did not leave the premises during this time.

The state introduced evidence of the money Buford had upon his person on the trial, and Buford sought to prove by two witnesses that he brought the money with him when he came from Oxford, where he lived, to Jackson during January to serve as a porter in the state Senate. One of the witnesses undertook to say that he was with him constantly; that they roomed together a great deal of the time and he saw the appellant with the money. This evidence was objected to by the state, and the circuit judge held that he would limit the defense to a showing that the money was in his possession immediately before the robbery, confining it to one day before the robbery is charged. The defense then asked the witness:

"Did you continually see this money in this man's possession? A. Yes, sir. (Objected to; sustained; exception.)"

Sallie Hudson, the negro woman at whose house the appellant roomed and boarded, was tendered as a witness by the appellant to prove the same facts, and her testimony was likewise limited to immediately before the robbery one day; that is to say, one day before the robbery. She stated that the appellant had money when he came there, which was objected to and sustained. She was then asked:

"State when, if you recall, had you seen the money just before it was said this old man was robbed. (Objected to.) Statement by the Court: I would limit that to the day of the alleged robbery or the day before. (Exception.) Q. Could you say when you had seen this money? (Objected to; sustained.) Q. When was the last time you saw this money prior to the robbery. By the Court: You need not answer that question. (Exception.)"

The policeman who visited Mr. Sanderson's store immediately after the robbery testified that Mr. Sanderson was excited and could give them no description of the person committing the robbery. One of the policemen said that Mr. Sanderson called him inside and said that the man looked like Lee, the man who kept the butcher shop; that Lee acted suspiciously and seemed nervous when he was telling of the robbery, and to keep a watch on him.

Some of the witnesses, the policeman Simmons being one of them, testified that there was another party in Jackson who resembled Buford, but that Mr. Sanderson said he was not the party.

The acting secretary of the Senate, who is a lawyer living in Oxford, Miss., testified as to the good character of Buford for honesty and fair dealing, and also testified that he had given Buford twenty dollars on the morning he was arrested with which to buy some sugar for the witness, and the proof showed that when Buford was arrested the money found on him contained two twenty-dollar bills.

The Governor of the state also testified as to the appellant's good character generally and for honesty and integrity.

The state procured one instruction, which reads as follows: "The court instructs the jury for the state, if you believe from the evidence beyond all reasonable doubt that the defendant took, stole, and carried away the money of J B. Sanderson in the manner as alleged in the indictment, then it would be the duty of the jury to find the defendant guilty as charged."

It is not argued that this instruction is error, and it may be that it was incorrectly copied into the record.

The case is close upon its facts, and, while the witness Sanderson is positive in his evidence that the appellant is the man who held the gun on him, he not having seen the person who took the money from him, there being two engaged in the robbery, and the fact that the appellant had money in his possession which would equal approximately one-half of the amount taken from Mr. Sanderson, taken in connection with the evidence for the appellant, especially of his good character, leads us to believe that the fact that he had money approximately equal to one-half of the amount taken from Sanderson had an important bearing with the jury in passing upon the question. It was admissible to show that he had the money in his possession when arrested which would equal approximately his share of the robbery, and in view of all the facts in this case we think it was important to the appellant to have been allowed reasonable latitude in showing an accounting for his possession of the money. While the fact that a person may have had money would not excuse a robbery, yet, where a person is shown to have enjoyed a good reputation for honesty, and is shown to have had money in his possession which would materially aid the state in proving its case, we think it was important to give the appellant reasonable latitude in his proof. We think one day was too short a period of time. Where the state relies on the possession of money as a part of its case, the appellant should be allowed to rebut this evidence by accounting for his possession of money, and he is entitled if he can produce it, to have other testimony than that of himself. Inasmuch as we have reached the conclusion that this was reversible error, we deem it important to call attention to the imperfection and error of the state's instruction above set out, though it was not pressed in the brief of the appellant.

*Reversed and remanded.*